# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SOCIETY OF GENERAL INTERNAL
MEDICINE & NORTH AMERICAN
PRIMARY CARE RESEARCH
GROUP,
       *Plaintiffs*,

      v.

ROBERT F. KENNEDY, JR., *et al.*,
      *Defendants*.

Case No. 8:25-cv-2751-BAH

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Stephanie B. Garlock (D. Md. Bar No. 31594)
Allison M. Zieve (admitted *pro hac vice*)
Cormac A. Early (admitted *pro hac vice*)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiffs*

September 8, 2025

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii

Introduction ............................................................................................................................. 1

Argument ................................................................................................................................. 1

   I.   Plaintiffs are likely to succeed on the merits of their claims. ........................................... 1

     A.   Defendants have identified no threshold barriers to Plaintiffs' APA claims.............. 1

       1.   Plaintiffs challenge discrete final agency action. ...................................................... 1

       2.   Plaintiffs properly bring both 706(2) and 706(1) claims. ............................................ 5

       3.   None of Defendants' actions are committed to agency discretion by law. ................. 5

     B.   Defendants are not operating the grant program required by statute.......................... 6

     C.   Plaintiffs are likely to succeed on their claim that Defendants have violated the relevant appropriations statute.................................................................................... 8

     D.   Plaintiffs are likely to succeed on their claim that Defendants have violated the Impoundment Control Act.................................................................................... 9

     E.   Defendants raise no meaningful challenge to the merits of Plaintiffs' arbitrary and capricious and unreasonable delay claims.................................................................. 13

   II.   Plaintiffs are suffering irreparable harm. ...................................................................... 13

   III.   The balance of the equities and public interest support the requested relief.................. 14

   IV.   The Court should not require any security. .................................................................... 15

Conclusion .............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Abbott*,
    560 U.S. 1 (2010)............................................................................................... 9

*Alabama-Coushatta Tribe of Texas v. United States*,
    757 F.3d 484 (5th Cir. 2014) ............................................................................ 2

*Alliance To Save Mattaponi v. U.S. Army Corps of Engineers*,
    515 F. Supp. 2d 1 (D.D.C. 2007) ..................................................................... 5

*Bacardi & Co. Ltd. v. U.S. Patent & Trademark Office*,
    104 F.4th 527 (4th Cir. 2024) ......................................................................... 10

*Biden v. Texas*,
    597 U.S. 785 (2022)........................................................................................... 5

*Brundle on behalf of Constellis Employee Stock Ownership Plan v. Wilmington Trust, N.A.*,
    919 F.3d 763 (4th Cir. 2019) .......................................................................... 13

*CASA, Inc. v. Trump*,
    No. 25-cv-201-DLB, 2025 WL 2257625 (D. Md. Aug. 7, 2025)........................... 15

*Child Trends, Inc. v. U.S. Department of Education*,
    No. 25-cv-1154-BAH, 2025 WL 1651148 (D. Md. June 11, 2025)....................... 14

*Child Trends, Inc. v. U.S. Department of Education*,
    No. 25-cv-1154-BAH, 2025 WL 2379688 (D. Md. Aug. 15, 2025) ........... 2, 3, 8, 9

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971)........................................................................................... 5

*City & County of San Francisco v. Trump*,
    897 F.3d 1225 (9th Cir. 2018) .................................................................. 11, 12

*City of New York v. U.S. Department of Defense*,
    913 F.3d 423 (4th Cir. 2019) ........................................................................ 2, 3

*Community Financial Services Ass'n of America v. Consumer Financial Protection Bureau*,
    601 U.S. 416 (2024)........................................................................................... 9

*Di Biase v. SPX Corp.*,
    872 F.3d 224 (4th Cir. 2017) .......................................................................... 14

*Global Health Council v. Trump*,
    No. 25-5097, 2025 WL 2480618 (D.C. Cir. Aug. 28, 2025)........................ 10, 14

*In re Aiken County,*
    725 F.3d 255 (D.C. Cir. 2013) ......................................................................... 8, 12

*Inova Alexandria Hospital v. Shalala,*
    244 F.3d 342 (4th Cir. 2001) ................................................................................ 5

*Jake's Fireworks Inc. v. Consumer Product Safety Commission,*
    498 F. Supp. 3d 792 (D. Md. 2020) ................................................................... 4, 5

*James A. Merritt & Sons v. Marsh,*
    791 F.2d 328 (4th Cir. 1986) .............................................................................. 14

*Lexmark International, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ............................................................................................ 11

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) .............................................................................................. 6

*Lovo v. Miller,*
    107 F.4th 199 (4th Cir. 2024) ............................................................................... 7

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990) .............................................................................................. 2

*Maryland v. Corporation for National & Community Service,*
    No. 25-cv-1363-DLB, 2025 WL 1585051 (D. Md. June 5, 2025) ..................... 4, 6

*Mayor & City Council of Baltimore v. Consumer Financial Protection Bureau,*
    775 F. Supp. 3d 921 (D. Md. 2025) ...................................................................... 4

*National Environmental Development Association's Clean Air Project v. Environmental
    Protection Agency,*
    752 F.3d 999 (D.C. Cir. 2014) .............................................................................. 4

*National Institutes of Health v. American Public Health Ass'n,*
    606 U.S. __, 2025 WL 2415669 (Aug. 21, 2025) .............................................. 15

*Norton v. Southern Utah Wilderness Alliance,*
    542 U.S. 55 (2004) ................................................................................................ 2

*Pashby v. Delia,*
    709 F.3d 307 (4th Cir. 2013) .............................................................................. 15

*Sackett v. Environmental Protection Agency,*
    566 U.S. 120 (2012) .............................................................................................. 3

*Sanders v. Callender,*
    No. 17-cv-1721-DKC, 2018 WL 337756 (D. Md. Jan. 9, 2018) ......................... 13

*Science Applications International Corp. v. CACI-Athena, Inc.*,
No. 1:08-cv-443-JCC, 2008 WL 2009377 (E.D. Va. May 8, 2008)......................................... 14

*Soundboard Ass'n v. Federal Trade Commission*,
888 F.3d 1261 (D.C. Cir. 2018) ............................................................................................... 5

*Telecommunications Research and Action Center v. Federal Communications Commission*,
750 F.2d 70 (D.C. Cir. 1984) ................................................................................................. 13

*Widakuswara v. Lake*,
779 F. Supp. 3d 10 (D.D.C. 2025) ........................................................................................... 3

**Statutes**

2 U.S.C. § 681(3) .................................................................................................................. 10

2 U.S.C. § 682 ...................................................................................................................... 12

2 U.S.C. § 683 ...................................................................................................................... 12

2 U.S.C. § 683(b) ............................................................................................................. 9, 11

2 U.S.C. § 684 ...................................................................................................................... 12

2 U.S.C. § 687 ...................................................................................................................... 10

5 U.S.C. § 706(1) ................................................................................................................... 5

5 U.S.C. § 706(2) ................................................................................................................... 5

42 U.S.C. § 299c-1(a)(1) ........................................................................................................ 6

Consolidated Appropriations Act,
Pub. L. No. 118-47, div. D, tit. II, 138 Stat. 460 (Mar. 23, 2024) ....................................... 8, 9

Full-Year Continuing Appropriations Act,
Pub. L. No. 119-4, 139 Stat. 9 (Mar. 15, 2025) ....................................................................... 8

**Congressional Material**

H.R. Rep. No. 93-658, *as reprinted in* 1974 U.S.C.C.A.N. 3462 ................................................ 11

S. Rep. No. 93-688, *as reprinted in* 1974 U.S.C.C.A.N. 3504 ........................................... 10, 11

**Regulations**

8 C.F.R. § 212.7(e)(2)(i) ......................................................................................................... 7

8 C.F.R. § 212.7(e)(8) ............................................................................................................. 7

42 C.F.R. § 67.15(a)(1) ................................................................................. 6

42 C.F.R. § 67.16(a) ...................................................................................... 6

42 C.F.R. § 67.16(b) ...................................................................................... 6

42 C.F.R. § 67.17(a) ...................................................................................... 6

**Rules**

Fed. R. Civ. P. 65(c) ................................................................................... 15

**Other Authorities**

Government Accountability Office, B-337203, *Department of Health and Human Services—National Institutes of Health—Application of Impoundment Control Act to Availability of Funds for Grants* (Aug. 5, 2025) ......................................................... 12

Government Accountability Office, *Principles of Federal Appropriations Law* (3d ed. Feb. 2006) ................................................................................... 8

Government Accountability Office, *Principles of Federal Appropriations Law* (4th ed. 2016) ......................................................................................... 12

## INTRODUCTION

Plaintiffs here challenge Defendants' action halting all consideration of grant applications by the Agency for Healthcare Research and Quality (AHRQ) and the agency's failure to spend appropriated funds on vital healthcare research grants. Defendants do not contest that these actions have occurred, and they do not suggest any plan to spend the tens of millions of dollars that Congress appropriated to AHRQ before those funds expire on September 30. Because Plaintiffs are suffering irreparable harm absent this Court's intervention, and because the public interest supports an order requiring Defendants to comply with their obligations to award AHRQ grants, the Court should grant Plaintiffs' motion for a preliminary injunction.

## ARGUMENT

**I.      Plaintiffs are likely to succeed on the merits of their claims.**

**A.      Defendants have identified no threshold barriers to Plaintiffs' APA claims.**

**1.   Plaintiffs challenge discrete final agency action.**

Plaintiffs explained in their opening memorandum that Defendants' halt of all AHRQ grantmaking is reviewable final agency action under the APA. *See* Pls. Mem. 14–15, ECF 4. Defendants, however, contend that their termination of grantmaking activity is neither discrete nor final, and thus is not challengeable under the APA. *See* Defs. Opp. 7–12, ECF 14. Defendants are wrong on both counts.

**a.** Plaintiffs satisfy the APA's discreteness requirement. To begin, Defendants concede that Plaintiffs' claim that Defendants have unreasonably delayed the processing of grant applications, Compl. ¶¶ 58–61, is sufficiently discrete. Defs. Opp. 10 n.3. Plaintiffs' other claims are discrete as well. Counts I through IV challenge the cessation of AHRQ's statutorily required grant program. *See* Compl. ¶¶ 42–57; Pls. Mem. 6–8, 16–21. Rather than seeking general improvement in *how* Defendants carry out AHRQ's grantmaking functions, Plaintiffs' claims focus on *whether* they are

1

happening at all. That kind of "failure[] to carry out discrete obligations can be subject to review" under the APA. *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 433 (4th Cir. 2019).

Defendants' efforts to analogize this case to "programmatic" attacks are unavailing. *See* Defs. Opp. 8–9 (citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004)). For instance, although Defendants rely on *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), there, the Supreme Court held that flaws in an "entire" land management program—"consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA." *Id.* at 893. And in *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484 (5th Cir. 2014), the Fifth Circuit held that a tribe could not challenge "the federal management of … natural resources," across all "leases, permits, and sales administered by multiple federal agencies." *Id.* at 490. Here, by contrast, because Defendants have applied "some particular measure across the board, … it can of course be challenged under the APA by a person adversely affected." *Lujan*, 497 U.S. at 890 n.2. Defendants' argument otherwise "appears to incorrectly conflate the Plaintiffs' use of the word 'program'" to describe the halted AHRQ grantmaking activity "with the legal definition of what constitutes an unreviewable 'programmatic attack.'" *Child Trends, Inc. v. U.S. Dep't of Educ.* (*Child Trends II*), No. 25-cv-1154-BAH, 2025 WL 2379688, at *7 (D. Md. Aug. 15, 2025).

Defendants also err in arguing that Plaintiffs' requested remedy resembles those that courts have found indicative of a programmatic attack. *See* Defs. Opp. 10. In *City of New York*, for example, the plaintiffs had asked for monthly compliance reports, until the court was "satisfied that Defendants ha[d] brought themselves into *full compliance* with" a set of broad obligations. 913 F.3d at 434. Here, Plaintiffs ask for an order requiring the agency to turn back on the grant

functions that were turned off. *See* Proposed Order, ECF 4-14. Such an order would not require the "court to function in … a day-to-day managerial role" over AHRQ. *City of New York*, 913 F.3d at 434.

Defendants seek to distinguish this case from *Child Trends, Inc. v. U.S. Department of Education*, where the agency had terminated a grant program, on the ground that AHRQ's grant program continues to exist, by virtue of grants the agency had awarded earlier this fiscal year. *See* Defs. Opp. 10 n. 4 (discussing *Child Trends II*, 2025 WL 2379688, at *4, *7 & n.9). But whether AHRQ has canceled existing grants is irrelevant to the action at issue here: the halting of grantmaking going forward. Defendants have presented no evidence that grantmaking is ongoing, nor generally rebutted the evidence Plaintiffs presented about the halt. Here, as in *Child Trends*, Plaintiffs' claims about "the legality of the termination of services or programs mandated by statute" do not "amount to a critique of the overall accuracy and reliability of federal agencies." *Child Trends II*, 2025 WL 2379688, at *7 n.9.

**b.** Defendants' halt to AHRQ grantmaking is also final within the meaning of the APA, as Plaintiffs have explained. *See* Pls. Mem. 14–15. Defendants counter that the cessation of AHRQ grantmaking is not final because it happened less than two months ago and "Plaintiffs do not allege that these circumstances are permanent." Defs. Opp. 11. But "*final* does not mean *permanent*." *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 32 (D.D.C. 2025). Although AHRQ "maintains the ability to reverse these actions at some unidentified point in the future" and begin grantmaking again, "that does not change the fact that the agency" is not doing so right now. *Id*. at 32–33; *see Sackett v. EPA*, 566 U.S. 120, 127 (2012) ("The mere possibility that an agency might reconsider … does not suffice to make an otherwise final agency action nonfinal.").

Defendants similarly contend that there is no final agency action because, while an AHRQ

official conceded in July that the agency was entirely "unable to process grant awards," he also noted that AHRQ was "evaluating options for [its] grant program." Defs. Opp. 11–12 (citing Trivedi Decl. Ex. A, ECF 4-7). But courts have rejected the notion that an agency action is non-final simply because the agency said it was "still assessing what additional actions may be necessary" and its "deliberations surrounding the matter are ongoing." *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1006 (D.C. Cir. 2014). Moreover, Defendants have not provided any detail about this supposed evaluation, including whether there is any prospect for AHRQ to restart grantmaking. "That the agency may, at some point in the future," award grants again does not render its failure to do so now, using current-year funds, "any less definitive." *Maryland v. Corp. for Nat'l & Cmty. Serv.*, No. 25-cv-1363-DLB, 2025 WL 1585051, at *15 (D. Md. June 5, 2025).

Defendants also seek support from *Mayor & City Council of Baltimore v. CFPB*, 775 F. Supp. 3d 921 (D. Md. 2025). That case, though, is inapposite. The court there found no final agency action where the plaintiffs challenged "a disembodied and unrealized decision to drain the CFPB of its operating funds and reserves." *Id.* at 938–39 (citing defendants' declarations indicating that, contrary to plaintiffs' theory of what had occurred, the agency had not attempted to transfer funds, was continuing to perform statutory functions, and was committed to satisfying its obligations going forward). Here, however, Defendants have not suggested—let alone provided evidence— that AHRQ is continuing to review applications or award grants consistent with its obligations.

The decision in *Jake's Fireworks Inc. v. CPSC*, 498 F. Supp. 3d 792 (D. Md. 2020), is likewise unavailing. There, the court considered whether a notice of noncompliance constituted the consummation of the agency's decisionmaking process, based on the specific internal review proceedings and enforcement scheme. *Id.* at 803–06. The court's assertion that "there must be no

indication that the decision will be revised in the future," *id.* at 803, must be understood in that context, given the court's recognition that the "agency's governing statutes and regulations are key to determining whether an action" represents the final agency decision. *Id.* (citing *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018)).

### 2. Plaintiffs properly bring both 706(2) and 706(1) claims.

Plaintiffs seek preliminary relief on four claims under 5 U.S.C. § 706(2), for agency action contrary to law and arbitrary and capricious, and one claim under 5 U.S.C. § 706(1), for agency action unreasonably delayed. Defendants seek to recast all of Plaintiffs' claims as failure-to-act claims under § 706(1). Defs. Opp. 12–13. Plaintiffs' § 706(2) and § 706(1) claims, however, rest on different allegations: The former focus on the agency's halt of grantmaking activity; the latter focuses on AHRQ's failure to process individual grant applications. Defendants' action halting the operations of an ongoing program is an affirmative act challengeable as arbitrary, capricious, and contrary to law. *See, e.g.*, *Biden v. Texas*, 597 U.S. 785, 807–08 (2022) (considering § 706(2) claims challenging allegedly unlawful termination of program). Besides, claims under § 706(1) and § 706(2) are not mutually exclusive. *See All. To Save Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 10 (D.D.C. 2007).

### 3. None of Defendants' actions are committed to agency discretion by law.

Defendants also contend that any challenged action is committed to agency discretion by law, and thus unreviewable under the APA. Defs. Opp. 21–23. "This exception to judicial review is a 'very narrow one,' reserved for 'those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 346 (4th Cir. 2001) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)). As Plaintiffs' memorandum makes plain, *see* Pls. Mem. 16–25, there is substantial law to apply for all of Plaintiffs' claims. *See also infra* I.B.–E. Moreover, while Defendants are

5

right that AHRQ has discretion over which grant applications to award, *see* 42 C.F.R. § 67.17(a), the agency has no discretion to decline to award grants entirely. *See* Pls. Mem. 16. And while the executive has discretion over how to allocate a lump-sum appropriation, *Lincoln v. Vigil*, 508 U.S. 182, 192–93 (1993), it does not have discretion to refuse to spend funds out of that appropriation entirely. *See Corp. for Nat'l & Cmty. Serv.*, 2025 WL 1585051, at *17. After all, "an agency is not free simply to disregard statutory responsibilities." *Lincoln*, 508 U.S. at 193.

**B.    Defendants are not operating the grant program required by statute.**

Defendants do not contest that the Public Health Service Act requires AHRQ to operate a grantmaking program. *See* Defs. Opp. 14. Defendants say, though, that they have satisfied any obligations to do so with whatever grants the agency approved before the cessation of activity in July, and that they are under no continuing obligation to do anything more with respect to grants. This argument misunderstands both the governing law and the relevant evidence.

As to the law, Defendants rely first on a regulation that, in their view, gives the AHRQ Director "nearly unlimited discretion" over whether to award any given grant. Defs. Opp. 14 (citing 42 C.F.R. § 67.17(a)). Again, though, the AHRQ Director has discretion over which grants to fund, not over whether to fund grants at all. Rather, the agency is required to award grants on a variety of topics. *See* Pls. Mem. 16.

Defendants also assert that AHRQ has no obligation to peer review or evaluate grant applications. *See* Defs. Opp. 15–16. But both the Public Health Service Act and AHRQ regulations require that AHRQ peer review and render a decision *on each application*. *See* 42 U.S.C. § 299c-1(a)(1) ("Appropriate technical and scientific peer review shall be conducted with respect to each application."); 42 C.F.R. § 67.15(a)(1) (mandating that "[a]ll applications … will be submitted" for peer review); *id.* § 67.16(a)–(b) (requiring one of three dispositions for all "applications recommended for further consideration" by peer review groups).

6

Defendants rely on *Lovo v. Miller*, 107 F.4th 199 (4th Cir. 2024), but that case supports Plaintiffs. In *Lovo*, the Fourth Circuit considered a regulation stating that the U.S. Citizenship and Immigration Service (USCIS) "will adjudicate a provisional unlawful presence waiver application in accordance with this paragraph" and a certain section of the relevant statute. *Id.* at 212 (citing 8 C.F.R. § 212.7(e)(8)). In addition, the court recognized that a different part of the regulation provided that "USCIS *may* adjudicate applications for a provisional unlawful presence waiver." *Id.* (quoting 8 C.F.R. § 212.7(e)(2)(i) (emphasis added)). The court found only one way to harmonize the two provisions: to read the latter provision as a discretionary authorization to review applications and the former as a mandatory guide on how any adjudication, when undertaken, must be done. *Id.* at 213. Here, no statute or regulation authorizes rather than requires AHRQ to peer review and evaluate grant applications. Instead, the relevant provisions state that each application *must* be peer reviewed and evaluated. Defendants' arguments mangle the relevant text.[1]

Defendants also ignore the facts underlying Plaintiffs' claim. Even current AHRQ grantees must receive awards from the agency each year in order to continue their projects. *See* Doe #2 Decl. ¶¶ 8, 15, ECF 4-4. Plaintiffs have put forward evidence that Defendants stopped all continuation awards as of mid-July and stopped issuing new awards even earlier. *See* Pls. Mem. 6–8. Thus, even if AHRQ is currently supporting some research grants, the agency will—at best, if it has not already—fall out of compliance with those obligations as awards issued in the beginning of the fiscal year run out. Given AHRQ's ongoing obligation to operate a grant program, *supra* at 6, there is no way to fulfill that duty without continuing to review and award grants.

---

[1] Defendants also contend that, even if AHRQ is required to peer review and evaluate grant applications (and it is), there is no statutory timeline for when it must do so. That argument, however, goes more to Plaintiffs' § 706(1) claim for unreasonable delay in reviewing individual applications. In any event, it is undisputed that AHRQ has stopped reviewing and evaluating applications entirely, on any timeframe, contrary to the statutory mandate.

Defendants do not claim that they are doing so.

**C.    Plaintiffs are likely to succeed on their claim that Defendants have violated the relevant appropriations statute.**

In its March 2025 Continuing Resolution, Congress appropriated to AHRQ,  "[f]or carrying out titles III and IX of the PHS Act, part A of title XI of the Social Security Act, and section 1013 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, $369,000,000." Consolidated Appropriations Act, Pub. L. No. 118-47, div. D, tit. II, 138 Stat. 460, 661–62 (Mar. 23, 2024) (2024 Appropriations Act) (appropriating funds for fiscal year 2024); Full-Year Continuing Appropriations Act, Pub. L. No. 119-4, § 1101, 139 Stat. 9, 10–11 (Mar. 15, 2025) (FY 2025 Continuing Resolution) (continuing funding in fiscal year 2025). AHRQ has violated that statute by failing to spend it on the purposes Congress enumerated, including grantmaking.

Defendants' primary response is that the appropriations statutes do not "compel AHRQ to allocate every dollar of appropriated funds" and, instead, should be read as an authorization to spend money up to a $369 million cap. That argument runs contrary to settled principles of appropriations law, under which the executive has no "unilateral authority to refuse to spend" funds appropriated by Congress, even if there may be "policy reasons … for wanting to spend less than the full amount appropriated by Congress for a particular project or program." *In re Aiken Cty.*, 725 F.3d 255, 261 (D.C. Cir. 2013) (Kavanaugh, J.); *see also Child Trends II*, 2025 WL 2379688, at *12 (finding similar position "untenable").

Congress, of course, *can* draft an appropriation that allows spending up to a cap. *See* Defs. Opp. 18; *see also* GAO, *Principles of Federal Appropriations Law* 6-28 (3d ed. Feb. 2006) (GAO Redbook) (explaining that, with an appropriation "not to exceed" an amount, "the agency is not required to spend the entire amount on the object specified"). Indeed, Congress did so elsewhere in the 2024 Appropriations Act, including on the same page as its appropriation for AHRQ. *See,*

*e.g.*, 138 Stat. at 662 (providing funding "not to exceed" $3.67 billion for Centers for Medicare & Medicaid Services program management). "In interpreting statutory text, we ordinarily presume that the use of different words is purposeful and evinces an intention to convey a different meaning." *Abbott v. Abbott*, 560 U.S. 1, 33 (2010). Defendants are thus wrong to suggest, Defs. Opp. 18–19, that Justice Kavanaugh's decision to join Justice Kagan's concurrence in *Community Financial Services Ass'n of America v. CFPB*, 601 U.S. 416 (2024), was a repudiation of the principles in *Aiken County*. The discussion in *CFSA* merely recognized that Congress *can* "give[] the Executive leeway to decide how to allocate funds, up to a ceiling." 601 U.S. at 442 (Kagan, J., concurring). That does not make it the default rule when Congress does not use words to that effect.

Finally, Defendants point out that the appropriation to AHRQ does not specify which portion should be used on grantmaking. *See* Defs. Opp. 19. But the act's explanatory statement, *see* Pls. Mem. 4, "offer[s] persuasive evidence of legislative intent" with respect to how much of AHRQ's appropriation should be spent on programmatic functions like grants, *Child Trends II*, WL 2379688, at *12 n.12. More to the point, Defendants have not rebutted Plaintiffs' showing that AHRQ planned to spend substantial sums on grants this fiscal year and that it is no longer doing so. Whether Defendants could use those funds for some other appropriate purpose, they have not claimed to be doing so. Rather, the undisputed record evidence is that millions of dollars in appropriations will expire in three weeks' time, in contravention of Congress's mandate.

### D.    Plaintiffs are likely to succeed on their claim that Defendants have violated the Impoundment Control Act.

Plaintiffs are also likely to succeed on their claim that, by virtue of Defendants' violation of the 2025 Continuing Resolution, they have run afoul of the instruction in the Impoundment Control Act (ICA) to make funds "available for obligation," unless that statute's processes are followed, 2 U.S.C. § 683(b). Defendants raise two challenges to this claim; both fail.

**a.** As a threshold matter, Defendants contend that Plaintiffs cannot bring an APA contrary-to-law challenge based on the ICA—either because the ICA precludes enforcement by anyone but the Comptroller General, or because Plaintiffs do not fall within the zone of interests of the ICA.

As to the first objection, Defendants rely on *Global Health Council v. Trump*, where a divided D.C. Circuit panel held that the plaintiffs could not bring an APA claim for violation of the ICA. *See* No. 25-5097, 2025 WL 2480618, at *10–11 (D.C. Cir. Aug. 28, 2025).[2] But that opinion, which is not binding in this Court, is erroneous. The APA "sets up a basic presumption of judicial review of agency action." *Bacardi & Co. Ltd. v. U.S. Pat. & Trademark Off.*, 104 F.4th 527, 531 (4th Cir. 2024) (internal quotation marks omitted). True, the APA gives way where another "statute precludes review," 5 U.S.C. § 701(a)(1), but preclusion "is not lightly to be inferred" and requires "clear and convincing indications," "or intent … fairly discernable in the statutory scheme." *Bacardi*, 104 F.4th at 531 (internal citations and quotation marks omitted). Although the ICA provides for suit by the Comptroller General in certain circumstances, 2 U.S.C. § 687, that is insufficient evidence of intent to preclude enforcement by others. *See Bacardi*, 104 F.4th at 532 (reasoning that authorization for judicial review in certain circumstances is not preclusive, where the statute was "silent about whether a third party may seek judicial review" and "includes none of the typical language foreclosing judicial review"). The statutory scheme, in fact, points the other direction: Another provision of the ICA clarifies that "[n]othing contained in this Act … shall be construed" "as affecting in any way the claims or defenses of any party to litigation concerning any impoundment." 2 U.S.C. § 681(3);[3] *see also* S. Rep. No. 93-688, *as reprinted in*

---

[2] Defendants also cite the Supreme Court's stay decision in *Trump v. Sierra Club*, 140 S. Ct. 1 (2019). Defs. Opp. 24–25. That case does not resolve whether the ICA may be enforced under the APA. As the D.C. Circuit has noted, that case concerned the existence of a constitutional cause of action and did not resolve even that question. *Glob. Health Council*, 2025 WL 2480618, at *9 n.15.

[3] In their discussion of the ICA, Defendants suggest that this case is distinguishable from *Child*

1974 U.S.C.C.A.N. 3504, 3574–75 ("The authority of the Comptroller General is not intended to infringe upon the right of any Members of Congress, or any other party, to initiate litigation.").

Defendants likewise miss the mark when they argue that Plaintiffs do not fall within the ICA's zone of interests. "[I]n the APA context," the zone-of-interests "test is not especially demanding." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014) (internal quotation marks omitted). It "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Id.* (internal quotation marks omitted). Plaintiffs' interest—in the obligation of AHRQ appropriations—is not so inconsistent with the ICA's purposes to fall outside its zone of interests. While one purpose of the ICA was "to restore responsibility for the spending policy of the United States to the legislative branch," the statute was also addressed at curtailing the executive's "attempts to refuse spending as a means 'to achieve less than the full objectives and scope of programs enacted and funded by Congress.'" *City & Cty. of S.F. v. Trump*, 897 F.3d 1225, 1234 n.3 (9th Cir. 2018) (quoting first H.R. Rep. No. 93-658, *as reprinted in* 1974 U.S.C.C.A.N. 3462, 3463, then S. Rep. No. 93-688, *as reprinted in* 1974 U.S.C.C.A.N. 3504, 3572–75). Plaintiffs are among the intended beneficiaries of the AHRQ programming that Congress funded, so they do not fall outside the zone of interests of the statutory requirement that the executive make funds "available for obligation." 2 U.S.C. § 683(b).

**b.** Plaintiffs are also likely to succeed on the merits of this claim. *See* Pls. Mem. 17–19. Defendants respond that the ICA plays no role here because, in their view, the requirement to make

---

*Trends*—where this Court declined to decide whether a cause of action was available under the ICA and instead granted relief on other grounds—because there are no other "statutory violations" here. Defs. Opp. 25 (discussing *Child Trends II*, 2025 WL 2379688, at *12–13). As discussed above, *supra* at 6–7, however, Plaintiffs are likely to establish other statutory violations here, too.

funds available for obligation only applies to funds that the executive has proposed for rescission, and only after Congress rejects the proposal. *See* Defs. Opp. 20–21. That reading is inconsistent with the statutory scheme, which imposes strict limitations on how and when the executive can defer budget authority—*i.e.*, withhold or delay any obligation or expenditure. *See* 2 U.S.C. §§ 682–84. The sections related to deferral make clear that, under the ICA, the executive must continue to spend appropriated funds, unless the President has complied with the relevant procedures under the ICA. Numerous courts, as well as the Government Accountability Office, have confirmed this understanding. *See, e.g., City & Cty. of S.F.*, 897 F.3d at 1234 (recognizing that, with the ICA, Congress "has affirmatively and authoritatively spoken" with respect to "the President's duty to execute appropriations laws"); *Aiken Cty.*, 725 F.3d at 261 n.1 (explaining that "the President does not have unilateral authority to refuse to spend … funds" unless the dictates of the ICA are followed); GAO, B-337203, *Department of Health and Human Services—National Institutes of Health—Application of Impoundment Control Act to Availability of Funds for Grants* 19 (Aug. 5, 2025)[4] (GAO NIH Finding) (concluding that actions limiting NIH's ability to obligate funds for grants had resulted in a withholding "inconsistent with the requirements of the ICA").

In a footnote, Defendants recharacterize the halt of AHRQ grantmaking as, at most, an acceptable programmatic delay, "in which operational factors unavoidably impede the obligation of budget authority." Defs. Opp. 20 n.8 (quoting GAO Redbook 2-50 (4th ed. 2016)). But even if the halt of grantmaking is an unavoidable result of the reduction-in-force of HHS staff, that wound is entirely self-inflicted and—as evidenced by the wholesale termination of grant activity—hardly part of a "reasonable and good faith effort to implement the program," GAO Redbook 2-50. *See also* GAO NIH Finding at 16 (rejecting programmatic delay defense in similar circumstances).

---

[4] https://www.gao.gov/assets/890/880607.pdf.

### E.    Defendants raise no meaningful challenge to the merits of Plaintiffs' arbitrary and capricious and unreasonable delay claims.

As to Plaintiffs' remaining claims—for the arbitrary and capricious halt of grantmaking and the unreasonable delay of decisions on pending applications—Defendants raise no specific defenses. Indeed, they mention the arbitrary and capricious claim only once in their argument, and only to make the irrelevant (and incorrect) point that Defendants are not required by law to award grants. *See* Defs. Opp. 12.

As to Plaintiffs' unreasonable delay claim, Defendants do argue that they are not required by law to peer review and evaluate grant applications. *Id.* at 14–17. For the reasons outlined above, that is wrong. *See supra* at 6–7. And while Defendants contend that there is likewise no requirement for them to review applications on any particular timeline, *see* Defs. Opp. 16, they do not engage at all with Plaintiffs' lengthy discussion of the factors relevant to determining when agency action has been unreasonably delayed, *see* Pls. Mem. 22–26 (discussing factors under *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)). Defendants state, in a footnote, that "the *TRAC* factors would militate against finding" any delay in grant review here unreasonable. Defs. Opp. 10 n.3. But an unelaborated assertion in a footnote neither rebuts Plaintiffs' argument nor is sufficient to preserve a counterargument. *See Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 778 (4th Cir. 2019); *Sanders v. Callender*, No. 17-cv-1721-DKC, 2018 WL 337756, at *7 n.5 (D. Md. Jan. 9, 2018).

## II.    Plaintiffs are suffering irreparable harm.

In their opening memorandum, Plaintiffs explained that their members—as well as Plaintiff NAPCRG directly—are irreparably harmed by the deprivation of the opportunity to compete for AHRQ grant funding. Pls. Mem. 26–27. The Court should reject Defendants' contrary arguments.

Defendants first assert that injuries in the form of lost effort preparing grant applications,

wasted work on projects that will lose funding midstream, and missed career opportunities are not cognizable. Defs. Opp. 28. But the case they cite, *Di Biase v. SPX Corp.*, 872 F.3d 224 (4th Cir. 2017), does not support that conclusion. It instead stands for the limited proposition that, where there is an alternate, albeit more cumbersome, avenue for plaintiffs to avoid their main form of harm, the expenditure of additional time and effort did not amount to irreparable harm. *Id.* at 235.

Defendants next contend that the loss of an opportunity to bid on a contract is not irreparable harm. Defs. Opp. 28–29. The case they cite, however, *James A. Merritt & Sons v. Marsh*, 791 F.2d 328 (4th Cir. 1986), is readily distinguishable: It concerned the temporary suspension of a government contractor that had been indicted for fraud, and no evidence in the record indicated what contracts the plaintiff had been prevented from bidding on or how that loss of opportunity would affect its business. *See id.* at 331 & n.4. By contrast, as this Court has recognized, the loss of opportunity to compete for government funding may constitute irreparable harm. *See Child Trends, Inc. v. U.S. Dep't of Educ.* (*Child Trends I*), No. 25-cv-1154-BAH, 2025 WL 1651148, at *10 (D. Md. June 11, 2025) (acknowledging potential harm but declining to find it imminent months before the obligation deadline); *Sci. Applications Int'l Corp. v. CACI-Athena, Inc.*, No. 1:08-cv-443-JCC, 2008 WL 2009377, at *2 (E.D. Va. May 8, 2008) (distinguishing *Merritt* and gathering cases finding irreparable harm from lost opportunity to compete).

Last, Defendants say that the requested injunction would not redress any claimed harm because no applicant is guaranteed to receive a grant. Defs. Opp. 29. However, "even the prospect of competing for funds" would at least "partially redress the injuries to the grantees[]" and grant applicants like Plaintiffs and their members. *Glob. Health Council*, 2025 WL 2480618, at *5.

## III.   The balance of the equities and public interest support the requested relief.

As to the remaining preliminary injunction factors, Defendants maintain that an injunction would "effectively disable Defendants from assessing" the AHRQ grant program's "effectiveness

14

and consistency with agency goals and priorities." Defs. Opp. 29. But they neither offered evidence that any such assessment is underway, nor explained how requiring them to operate the program required by Congress would preclude such a review. Asserting that the government is irreparably harmed by an order requiring it to disburse funds, Defendants cite *National Institutes of Health v. American Public Health Ass'n*, 606 U.S. __, 2025 WL 2415669, at *1 (Aug. 21, 2025). That case, however, concerned an order requiring the government to pay out money on specific grants. *See id.* Here, by contrast, the requested relief would require the government to operate a program required by law, with full discretion over which grants to fund, by obligating funds Congress had appropriated for that use.

Importantly, Defendants do not argue against Plaintiffs' request to extend the availability of AHRQ appropriations beyond their September 30 expiration date. For the reasons Plaintiffs have laid out, *see* Pls. Mem. 30, that relief is appropriate and in the public interest.

## IV.    The Court should not require any security.

Defendants ask the Court to require Plaintiffs to post a bond equal to the amount that will be expended under any injunction. Defs. Opp. 30 (citing Fed. R. Civ. P. 65(c)). The Court should either decline or require a nominal bond of $1. "[T]he district court retains the discretion to set the bond amount as it sees fit or waive the security requirement." *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013). Plaintiffs are professional societies with a mission of advancing public health through research, and they bring suit on behalf of researchers who rely on AHRQ grants to support their work. Where a substantial bond would effectively deny public interest plaintiffs their right to judicial review, courts have waived the requirement entirely or required only a nominal bond. *See, e.g.*, *CASA, Inc. v. Trump*, No. 25-cv-201-DLB, 2025 WL 2257625, at *11 (D. Md. Aug. 7, 2025).

## CONCLUSION

The Court should grant Plaintiffs' motion for a preliminary injunction.

Dated: September 8, 2025

Respectfully submitted,

_/s/ Stephanie B. Garlock_
Stephanie B. Garlock (D. Md. Bar No. 31594)
Allison M. Zieve (admitted *pro hac vice*)
Cormac A. Early (admitted *pro hac vice*)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Plaintiffs*